IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA,
FOR THE USE OF

SOUTHEASTERN STUD & COMPONENTS, INC.                    PLAINTIFF

v.                          4:07-CV-00593-WRW

AMERICAN EAGLE DESIGN BUILD                             DEFENDANTS
STUDIOS, LLC, et al.

## ORDER

Pending is Defendant American Eagle Design Build Studios, LLC's Motion for Judgment on the Pleadings (Doc. No. 97). Plaintiff has responded (Doc. No. 105). Also pending is Defendant American Eagle Design Build Studios, LLC's Motion for Protective Order (Doc. No. 109). For the reasons set out below, both Motions are DENIED.

## I. BACKGROUND

This case arises out of a contract dispute involving the construction of housing at the Little Rock Air Force Base.[1] Defendant Little Rock Family Housing was the management partner for the privatized housing project at the Little Rock Air Force Base; American Eagle Design Build Studios, LLC ("AEDBS") was the prime contractor.[2] Plaintiff and AEDBS entered into a Subcontract Work Agreement ("Subcontract") on August 23, 2006.[3]

Under the Subcontract, Plaintiff was to provide labor and materials to AEDBS's Little Rock project ("Project").[4] Defendant Arch Insurance Company issued the payment bond

---

[1] Doc. No. 1.

[2] *Id.*

[3] Doc. No. 56.

[4] Doc. No. 56.

1

guaranteeing the payment of subcontractors that worked on the Project.[5] Under AEDBS Service Purchase Order #AL21-002, Plaintiff initially agreed to fabricate steel framing and erect 98 houses at the Project, with a price not to exceed $3,867,512.25.[6] Change Order No. 1 to AEDBS Service Purchase Order No. AL21-002 ("PO") decreased the price by $190,492.30, resulting in the final contract price of $3,677,019.95.[7] Plaintiff recieved $1,356,919.30 for work under the PO, and claimed $1,151,608.60 still owed work performed under the PO.[8]

Plaintiff, in its First Amended Complaint, asserts claims against American Eagle Design Studios ("AEDBS") in Count I under the Miller Act, demanding payment for work performed in the amount of $1,151,608.60 plus interest, disruption damages, and attorney's fees. In Count II Plaintiff seeks a declaratory judgment against AEDBS on the payment and performance bond issued by Defendant Arch, also claiming damages in the amount of $1,151,608.60 plus interest, disruption damages, and attorneys fees. In Count III, Plaintiff asserts it is entitled to damages from AEDBS in the amount of $1,615,628.00 -- $1,151,068.60 plus $464,020.00 in lost profits -- for breach of the subcontract.[9] Count IV alleges AEDBS breached an agreement under which Plaintiff signed certain releases and, in exchange, Defendant agreed to pay Plaintiff amounts owed for work performed under the PO. Count V is a quantum meruit claim against Defendants AEDBS, seeking to recover the reasonable value of services performed and material provided. In Count VI, Plaintiff names AEDBS in a fraudulent inducement claim. In Count VII, Plaintiff

---

[5]Doc. No. 1.

[6]Doc. No. 56.

[7]*Id*.

[8]*Id*.

[9]*Id*. $1,151,608.60 for compensation of work already performed, plus $464,020.00 in profits not realized due to AEDBS's alleged breach of the subcontract.

requests declaratory judgment invalidating releases it signed. Plaintiff claims disruption damages against AEDBS in Count VIII, and lost business opportunities and profit in Count IX. Count X seeks to hold AEDBS liable under a civil conspiracy theory. Plaintiff's Count XIII seeks to pierce AEDBS's corporate veil.

Defendant Arch was dismissed from this action at Plaintiff's request because the parties settled;[10] Defendant Arch paid Plaintiff $1,360,000.00.[11]

Defendant AEDBS filed a Motion for Judgment on the Pleadings, asserting that Plaintiff cannot now recover from AEDBS because Plaintiff settled with Defendant Arch for amounts outstanding under the PO. Defendant AEDBS maintains that under the damages clause in the Subcontract, AEDBS is not liable for any incidental, indirect, impact, or consequential damages in connection with the Subcontract.[12] The damages clause reads:

> In no event shall CONTRACTOR, CLIENT, CONTRACTOR's insurers, directors, officers, affiliates, parent companies, or employees be liable for any incidental, indirect, impact or consequential damages or, in the cumulative aggregate, for any damages in excess of the compensation to be paid by CONTRACTOR under a PO involved or such minimum amount as is permitted by law, if any.[13]

Defendant AEDBS asks that Plaintiff's First Amended Complaint be dismissed against it.[14]

---

[10]Doc. No. 91.

[11]Doc. No. 105.

[12]Doc. No. 97.

[13]*Id.*

[14]*Id.*

**II. JUDGMENT ON THE PLEADINGS STANDARD**

"A grant of judgment on the pleadings is appropriate 'where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.'"[15] The Court must accept as true all facts pled by the non-moving party, and all reasonable inferences from the pleadings must be viewed in the light most favorable to the non-moving party.[16]

**III. DISCUSSION**

Plaintiff's causes of action, generally, arise either out of contract or tort. One of Plaintiff's counts against AEDBS is fraudulent inducement. Plaintiff alleges that Defendant AEDBS fraudulently induced it to: (a) enter into the Subcontract; (b) continue working on the project when AEDBS knew Plaintiff would not be paid; and (c) sign lien releases on assurances Plaintiff would be paid.[17] Plaintiff claims damages in the amount of "$1,151,608.60 (not including interest, disruption damages and attorney's fees and expenses) . . ." and "seeks punitive damages against . . . AEDBS."[18]

In its Motion to Dismiss, AEDBS asserts:

Plaintiff has been fully compensated for its alleged losses by Arch. Even if it had not been fully compensated, its recovery under the Subcontract would be limited to the amount of compensation to be paid the plaintiff under the terms of the Subcontract. This is a contractual provision agreed to by the plaintiff, and the plaintiff is bound by its terms.[19]

---

[15]*Poehl v. Countrywide Home Loans, Inc.*, No. 07-2988; 07-3249, 2008 U.S. App. Lexis 12916, at *7 (8th Cir. June 19, 2008).

[16]*Dillard's Inc. v. Liberty Life Assur. Co.*, 456 F.3d 894, 899 (8th Cir. 2000).

[17]Doc. No. 105.

[18]Doc. No. 1.

[19]Doc. No. 97.

Plaintiff pointed out that "[u]nder Arkansas law, legitimate tort claims can arise out of contractual relationships."[20] The case cited by Plaintiff in support of its position explains that when a breach of contract arises from an affirmatively wrong act, *i.e.*, a misfeasance rather than simply a failure to act, courts have recognized tort liability when the misfeasance "involves a foreseeable, unreasonable risk of harm to the plaintiff's interests."[21] It is necessary to go farther back than misfeasance in analyzing Plaintiff's fraudulent inducement claim; I must look at the formation of the Subcontract.

In connection with fraudulent inducement, the Arkansas Supreme Court has said:

> Fraud cannot be an agreement. It is an imposture practiced by one upon another. It may be used as an inducement to enter into an agreement. [Plaintiff] does not claim that [it] entered into an agreement that affects the validity of the contract, but that [it] was induced by false representations to enter into the contract. If that be true the validity of the contract is not assailed, but its very existence is destroyed. To constitute fraud by false representation there must be a representation of alleged existing fact; that representation must be false in fact; it must be made with intent to deceive; and the person to whom it is made must believe it.[22]

The first aspect of Plaintiff's fraudulent inducement count is that AEDBS fraudulently induced Plaintiff to enter into the Subcontract. Plaintiff alleges agents of AEDBS assured it that AEDBS was separate from Defendant Carabetta; that the AEDBS agents knew the representation was false; that agents of AEDBS made the representation so that Plaintiff would contract with AEDBS; and that Plaintiff relied on those representations.[23]

---

[20]Doc. No. 105.

[21]*Westark Specialties, Inc. v. Stouffer Family, Ltd., Partnership*, 310 Ark. 225, 232-33 (1992).

[22]*Wal-Mart Stores, Inc. v. Coughlin*, 369 Ark. 365, 375 (2007) (quoting *Allen v. Overturf*, 234 Ark. 612, 615-16 (1962)).

[23]Doc. Nos. 1, 105.

5

In its Motion for Judgment on the Pleadings, Defendant addressed Plaintiff's fraudulent inducement claim only from a contract/damages perspective; Defendant did not address the fraudulent inducement claim on the merits.[24] There remain material issues of fact in dispute in connection with Plaintiff's fraudulent inducement claim. If Defendant fraudulently induced Plaintiff to enter into the Subcontract, the entire Subcontract may be void. If the Subcontract is void, Plaintiff would not be prevented from claiming damages that are not allowed under the Subcontract.

Even if Defendant did not fraudulently induce Plaintiff into contracting with it, Defendant still faces the misfeasance claims of the fraudulent inducement count. As Plaintiff pointed out, Arkansas courts have allowed tort actions in connection with breach of contract when misfeasance involves a foreseeable risk of harm to Plaintiff's interests. Again, Defendant addressed the fraudulent inducement claim only from a contract/damages perspective. With respect to fraudulent inducement, there remain material issues of fact in dispute.

## CONCLUSION

Because there remain material issues of fact in dispute in connection with Plaintiff's fraudulent inducement claim, Defendant's Motion for Judgment on the Pleadings (Doc. No. 97) is DENIED.

Defendant's Motion for Protective Order (Doc. No. 109), in which Defendant asked for a protective order while its Motion for Judgment on the Pleadings is pending, is DENIED as MOOT.

IT IS SO ORDERED this 1st day of July, 2008.

/s/ Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[24]Doc. No. 97.